1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  1:15-cr-00319-NONE-SKO-5

12                 Plaintiff,

13          v.                              ORDER DENYING DEFENDANT'S
                                            MOTION FOR COMPASSIONATE
14   JULIO CESAR BARRON,                     RELEASE

15                 Defendant.               (Doc. No. 213)

16

17

18          Pending before the court is defendant Julio Cesar Barron's motion for compassionate

19   release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's

20   medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-

21   19") outbreak.  (Doc. No. 213.)  For the reasons explained below, defendant's motion will be

22   denied.

23                                    **BACKGROUND**

24          On November 12, 2015, defendant Barron was charged by way of indictment as follows:

25   Count One – conspiracy to distribute heroin, marijuana, 50 grams or more of actual

26   methamphetamine and 500 grams or more of a mixture or substance containing a detectable

27   amount of methamphetamine and cocaine in violation of 21 U.S.C. §§ 846, 841; and Count Four

28   – possession with the intent to distribute 50 grams or more of actual methamphetamine and 500

grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841.  (Doc. No. 20.)  A superseding indictment was filed on December 10, 2015 containing those same charges against defendant Barron.  (Doc. No. 45.)  On August 29, 2018, defendant entered into a plea agreement with the government, agreeing to plead guilty to possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) as charged in Count Four of the superseding indictment.  (Doc. No. 124.)  According to the presentence report prepared in defendant Barron's case he had arranged to purchase one kilogram of crystal methamphetamine by way of a text message that was intercepted by authorities.  (Doc. No. 155 ¶¶ 5–8.)  The California Highway Patrol arrested defendant Barron after officers found the methamphetamine in the car Barron was a passenger in.  (*Id.* ¶ 9.)  It was determined that, under the U.S. Sentencing Guidelines, defendant's adjusted offense level was 31, and his criminal history placed him in category VI, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 188 and 235 months.  (*Id.* at 23.)  The U.S. Probation Office recommended a downward departure due to an overstated criminal history and to sentence defendant as a criminal history category V to a low–end of the guidelines sentence of 168 months.  (*Id.* at 20–21, 23.)  On November 30, 2018, the court varied downward from that recommendation and sentenced defendant to 130 months in prison with a 36-month term of supervised release to follow.  (Doc. No. 159.)  Thus far, defendant has served approximately 62 months of that sentence and has an anticipated release date of September 14, 2024.  (*See* Doc. No. 244 at 12.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") FCI-Florence.  *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 14, 2021.)  On March 8, 2021, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 213.)  Defendant filed a supplemental motion on April 30, 2021.  (Doc. No. 244.)  On May 28, 2021, the government filed its opposition to the motion, and on June 15, 2021, defendant filed his reply thereto.  (Doc. Nos. 252, 259.)

/////

2

1

**LEGAL STANDARD**

2       A court generally "may not modify a term of imprisonment once it has been imposed."  18

3   U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

4   conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

5   be modified by a district court except in limited circumstances.").  Those limited circumstances

6   include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.

7   3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"),

8   motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A)

9   (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for

10   compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the

11   FSA specifically provides that a court may

12           upon motion of the defendant after the defendant has fully exhausted

13           all administrative rights to appeal a failure of the [BOP] to bring a
         motion on the defendant's behalf[1] or the lapse of 30 days from the

14           receipt of such a request by the warden of the defendant's facility,
         whichever is earlier, may reduce the term of imprisonment (and may

15           impose a term of probation or supervised release with or without
         conditions that does not exceed the unserved portion of the original

16           term of imprisonment), after considering the factors set forth in [18
         U.S.C. §] 3553(a) to the extent that they are applicable, if it finds

17           that –

18           (i)     extraordinary and compelling reasons warrant such a
                 reduction; or

19           (ii)    the defendant is at least 70 years of age, has served at least 30

20                   years in prison, pursuant to a sentence imposed under section
                 3559(c), for the offense or offenses for which the defendant

21                   is currently imprisoned, and a determination has been made
                 by the Director of the [BOP] that the defendant is not a danger

22                   to the safety of any other person or the community, as
                 provided under section 3142(g);

23

24   [1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the
   defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the

25   date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the Regional Director denies
   a defendant's administrative appeal, the defendant must appeal again to the BOP's "General

26   Counsel within 30 calendar days of the date the Regional Director signed." *Id.*  "Appeal to the
   General Counsel is the final administrative appeal." *Id.*  When the final administrative appeal is

27   resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C.
   § 3582(c)(1)(A).

28

3

1    and that such a reduction is consistent with applicable policy
2    statements issued by the Sentencing Commission[.]

3    18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

4          The policy statement with respect to compassionate release in the U.S. Sentencing

5    Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."

6    U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*,

7    451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G.

8    § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement

9    was issued before Congress passed the FSA and authorized defendants to file compassionate

10   release motions).  However, the Ninth Circuit recently held "that the current version of U.S.S.G.

---

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.*  The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2).  After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

1   §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by

2   a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  "In other words, the

3   Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A)

4   motions filed by a defendant." *Id.*  The Ninth Circuit clarified that "[t]he Sentencing

5   Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for §

6   3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v.*

7   *Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

8           In so holding, the Ninth Circuit joined the five other circuits who have addressed this

9   issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

10   motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

11   defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

12   ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

13   compelling reasons that an imprisoned person might bring before them in motions for

14   compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated

15   version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980

16   F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for

17   compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have

18   full discretion to define 'extraordinary and compelling' without consulting the policy statement

19   §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy

20   statement covering prisoner-initiated applications for compassionate release.  District judges must

21   operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

22   deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In

23   short, we agree with the Second Circuit and the emerging consensus in the district courts:  There

24   is as of now no 'applicable' policy statement governing compassionate-release motions filed by

25   defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are

26   'empowered . . . to consider any extraordinary and compelling reason for release that a defendant

27   might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021)

28   ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test,

1   its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case

2   was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G.

3   § 1B1.13.").

4         In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

5   defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

6   *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

7   has not specifically addressed the question of which party bears the burden in the context of a

8   motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts

9   that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United*

10   *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020);

11   *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7,

12   2020).

13                                   **ANALYSIS**

14         As district courts have summarized, in analyzing whether a defendant is entitled to

15   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

16   defendant has satisfied three requirements:

17              First, as a threshold matter, the statute requires defendants to exhaust
             administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
18              district court may grant compassionate release only if "extraordinary
             and compelling reasons warrant such a reduction" and "that such
19              reduction is consistent with applicable policy statements issued by
             the Sentencing Commission.  *Id.*  Third, the district court must also
20              consider "the factors set forth in Section 3553(a) to the extent that
             they are applicable."  *Id.*
21

22   *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

23   LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74;

24   *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

25   2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

26   "consistent with" the sentencing factors set forth in § 3553(a)).

27   /////

28   /////

6

1 **A.      Administrative Exhaustion**

2          Defendant submitted an administrative request to the warden at FCI Florence on October

3   7, 2020.  (Doc. No. 213 at 18.)  On January 12, 2021, the warden denied defendant's request.  (*Id.*

4   at 19.)  Because he filed the pending motion for compassionate release after submitting a request

5   to the warden and waiting more than 30 days without receiving a response, defendant has

6   exhausted his administrative remedies.  Therefore, the court will turn to the merits of defendant's

7   motion.

8 **B.      Extraordinary and Compelling Reasons**

9          "Extraordinary and compelling reasons" warranting compassionate release may exist

10   based on a defendant's medical conditions, age and other related factors, family circumstances, or

11   "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

12   reasons" was included in the policy statement at a time when only BOP could bring a

13   compassionate release motion, courts have agreed that it may be relied upon by defendants

14   bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

15   JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

16          Thus, the medical condition of a defendant may warrant compassionate release where he

17   or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

18   trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

19   specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

20   examples of terminal illnesses that may warrant a compassionate release "include metastatic

21   solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

22   dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

23   condition may warrant compassionate release, including when:

24          The defendant is

25          (I)   suffering from a serious physical or medical condition,

26          (II)  suffering from a serious functional or cognitive impairment, or

27          (III) experiencing deteriorating physical or mental health because of
             the aging process,

28

7

1
2

> that substantially diminishes the ability of the defendant to provide
> self-care within the environment of a correctional facility and from
> which he or she is not expected to recover.

3   *Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not

4   be sufficient to warrant compassionate release under ordinary circumstances, some courts have

5   concluded that the risks posed by COVID-19 tips the scale in favor of release in particular

6   situations.  *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020)

7   ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's

8   health problems, proximity to his release date, and rehabilitation would not present extraordinary

9   and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his

10  sentence.").

11      Compassionate release may also be warranted based on a defendant's age and other

12  related factors.  In these situations, "extraordinary and compelling reasons" exist where a

13  "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or

14  mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of

15  his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[4]  In

16  determining a defendant's projected release date, courts may take into account any "good time

17  credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18

18  U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal.

19  2020).

20      Here, defendant Barron argues that he is "suffering from a serious physical or mental

21  condition."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Specifically, he argues that extraordinary and

22  compelling reasons warranting his compassionate release exist due to his obesity, lingering

23  symptoms after his previous infection with COVID-19, (Doc. No. 244 at 4–7), and hypertension

24  (Doc. No. 213 at 4).  Defendant acknowledges that he has now been fully vaccinated for COVID-

25  19 but argues that he can still contract the virus again.  (Doc. No. 259 at 2–3.)  To qualify for

26  compassionate release, defendant must demonstrate that he is suffering from some "serious"

27

28  [4]  Because defendant Barron is only 41 years old, (*see* Doc. No. 155 at 3 (birthdate)), these age
and age-related factors are irrelevant to the court's disposition of the pending motion.

8

1    medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI

2    Florence and that his medical condition is one "from which he . . . is not expected to recover."

3    U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  With respect to defendant's obesity, based on defendant's

4    height and weight, his body mass index (BMI) is 41.8.  (Doc. No. 256 at 66); *Adult BMI*

5    *Calculator*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

6    https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calcula

7    tor.html (last visited July 14, 2021).  This is considered obese.  (*See* Doc. No. 256 at 70 (in

8    defendant's medical records, describing him as "Morbid obese").)  Defendant's obesity and

9    hypertension may place him at a greater risk of suffering a severe illness if he were to contract

10   COVID-19 again.  *See generally People with Certain Medical Conditions*, CENTERS FOR DISEASE

11   CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

12   precautions/people-with-medical-conditions.html (last visited July 15, 2021).  The government

13   concedes defendant's hypertension and obesity do constitute increased risk, but it argues that

14   extraordinary and compelling reasons do not exist because defendant has recovered from his

15   previous bout of COVID-19 and is now fully vaccinated.  (Doc. No. 252 at 7–9.)

16       Defendant received his first dose of the Moderna vaccine on January 22, 2021 and his

17   second dose on February 24, 2021.  (Doc. No. 256 at 146 (sealed).)  Because more than two

18   weeks have passed since receiving his second dose, defendant is now fully vaccinated against the

19   virus.  *See COVID-19: When You've Been Fully Vaccinated*, CENTERS FOR DISEASE CONTROL

20   AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html

21   (last visited July 15, 2021).  Nonetheless, defendant argues that the vaccine is not 100% effective

22   in preventing infection from COVID-19 and thus there is still some risk to him.  (Doc. No. 259 at

23   2–3.)  According to the CDC, authorized vaccines in the U.S., including the Moderna vaccine,

24   "are highly effective at protecting vaccinated people against symptomatic and severe COVID-

25   19."  *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*,

26   CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-

27   ncov/vaccines/fully-vaccinated-guidance.html (last visited July 15, 2021).  At this point, the

28   medical evidence strongly suggests that fully vaccinated individuals, like defendant Barron, are

1    reasonably well-protected against becoming severely ill or dying from COVID-19.[5]  *See United*

2    *States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB, 2021 WL 2322680, at *3 (D. Minn. June 7,

3    2021) (denying compassionate release because "any risk...has been substantially reduced because

4    [defendant] is likely now fully vaccinated" which "provides him with significant protection

5    against severe illness or death from COVID-19 should he become reinfected"); *United States v.*

6    *Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (concluding that

7    federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that

8    would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary

9    and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No.

10   2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no

11   federal court of appeal appears to have considered the question, district courts across the country,

12   including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts

13   any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United*

14   *States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar.

15   29, 2021) (finding no extraordinary and compelling reasons for compassionate release where

16   defendant has been fully vaccinated); *United States v. Grummer*, —— F. Supp. 3d ——, 2021 WL

17   568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic

18   medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-

19   19.  Other courts to address the issue have reached similar conclusions."); *United States v.*

20   *Ballenger*, No. 16-cr-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause

21   [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not

22   /////

23   /////

24   /////

25

26   [5] Based upon news reports, it would also appear that it is exceedingly rare for a vaccinated
     individual to both contract the virus and to suffer a severe illness as a result.  *See* Lila Seidman,
27   *Napa County Records First Death of Fully Vaccinated Person from COVID-19*, June 7, 2021,
     https://www.latimes.com/california/story/2021 -06-07/napa-county-records-first-fully-vacinated-
28   person-covid-death (last visited June 15, 2021).

1   amount to an extraordinary and compelling reason to warrant compassionate release.").[6]

2          Defendant also argues that he has lingering effects from his previous infection.  (Doc. No.

3   244 at 5–6.)  Defendant's medical records indicate that as of March 5, 2021, he had a dry cough

4   and constant chest pain since his infection.  (Doc. No. 256 at 12 (sealed).)  Defendant argues that

5   the potential long-term impacts of being infected with COVID-19 are unknown.  (Doc. No. 244 at

6   5.)  Defendant does not argue that his lingering symptoms are, themselves, extraordinary and

7   compelling reasons to justify compassionate release.  Rather, he argues that the effects of his

8   lingering symptoms are unknown.  Especially in light of defendant's now vaccinated status, he

9   has not satisfied his burden of demonstrating that COVID still poses a significant risk to him

10  despite having received the vaccine.  *See Greenhut*, 2020 WL 509385, at *1 ("The defendant

11  bears the initial burden to put forward evidence that establishes an entitlement to a sentence

12  reduction.").

13         Based on the medical evidence before the court, the court concludes that although

14  defendant Barron does suffer from a condition that may place him at higher risk of becoming

15  seriously ill if he were to be infected by COVID-19, he has not met his burden of demonstrating

16  extraordinary and compelling reasons for his compassionate release under § 3582(c)(1)(A), in

17  large part because that risk has been significantly mitigated by his receiving the COVID-19

18  vaccination.  Therefore, defendant's motion will be denied on this basis.

19  **C.      Consistency With the § 3553(a) Factors**

20         Because the pending motion fails to establish extraordinary and compelling reasons

21  justifying compassionate release, the court need not address whether any reduction in defendant's

22  sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. §

23  3553(a).  Nonetheless, the undersigned notes that the presentence report in defendant's case

24  _____

25  [6]  Moreover, as of the date of this order, it appears that the Bureau of Prisons is reporting that only one prisoner and one staff member are currently suffering from active infections with the

26  COVID-19 virus. See COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited August 5, 2021).  While the undersigned does not necessarily accept

27  these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court

28  challenging those reported numbers in this case.

1   recommended a downward departure to a sentence of 168 months due to an overstated criminal

2   history score and that the sentencing judge varied downward another 38 months from that

3   recommendation to the imposed sentence of 130 months.[7]  Despite the conclusion that his

4   criminal history was overstated, defendant Barron did have a prior criminal history that included

5   felony convictions for arson of an inhabited property and possession of marijuana for sale.  This

6   criminal conviction involved his purchase of one kilogram of methamphetamine.  The co-

7   defendant in this case who was determined to be a leader or organizer, was sentenced to a term of

8   imprisonment of 292 months.  Another defendant involved in the distribution ring was sentenced

9   to a 240-month term of imprisonment.  Two other co-defendants were sentenced to 121 months

10  (after receiving a minor role downward adjustment) and 72 months in prison, while one co-

11  defendant received a sentence of credit for time served.  The undersigned is impressed by

12  defendant Barron's rehabilitation efforts and formation of a solid release plain.  Nonetheless,

13  under the circumstances of this case, the court also concludes that the granting of defendant's

14  motion would lead to unwarranted sentencing disparity and also would not adequately reflect the

15  seriousness of his offense of conviction, promote respect for the law, provide just punishment, or

16  afford adequate deterrence to criminal conduct.  *See United States v. Purry*, No. 2:14-cr-00332-

17  JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 1:15-

18  cr-00264-LHK-1, 2020 WL 2733993 at *5 (N.D. Cal. May 26, 2020); 18 U.S.C. § 3553(a).

19                                               **CONCLUSION**

20          For the reasons explained above, the court concludes that defendant has not demonstrated

21  that "extraordinary and compelling reasons" exist warranting his compassionate release from

22  prison.  Accordingly, defendant's motion for compassionate release (Doc. No. 213) is denied.

23  IT IS SO ORDERED.

24      Dated:   **August 6, 2021**                    _____

25                                                        UNITED STATES DISTRICT JUDGE

26

27  [7]  The presentence report concluded that a criminal history category IV would have most
    accurately depicted defendant's criminal history but was restricted by the advisory guidelines
28  from recommending a departure of more than a one category variance.  (Doc. No. 155 at 21.)

                                                  12